My name is Jeffrey Levitke, Your Honor, and I'm representing the University of Washington and affiliated hospitals in this case. What distinguishes this case from the Adina and Cooper decision is that the State of Washington made a payment to the hospitals on a per-claim basis for specific services to specific patients on specific dates, thus meeting the definition of medical assistance in Section 1905. And that's the reason that at ER 170, Mr. Johnson testified that the MIGAU patients at issue in this case were included in the Medicare inpatient utilization rate. Now, at ER 30, the CMS administrator made the finding that the MIGAU program was included in the state plan approved under Title 19 for purposes of, quote, additional funding under Section 1923, end quote. And that finding of fact made by the CMS administrator was spot-on correct. And that is exactly what occurred. Under the finding of fact, there was a, under Section 1923, the federal medical assistance percentage was applied to the state's cost for disproportionate share patients. Counsel, what about legacy? Legacy Emanuel, 1996 case, our circuit? Well, Your Honor, I don't think legacy Emanuel is really on the issue here because it doesn't deal specifically with the issue of eligibility for medical assistance in this context. And it's not inconsistent with the argument. We are claiming your argument. Your Honor, just to be precise, we are asserting that the Section 1905 definition, we are not objecting to the being, we can meet the Section 1905 definition of medical assistance in this case. That is our argument. We don't have a, and we have done so because we've made a claimant on a per-payment basis to the hospitals. This is a regular health insurance program like any other kind of health insurance program which is, frankly, would be covered by any other Medicaid patient. There is enrollments. There are individual certification. They wouldn't otherwise be eligible, though, would they, for Medicaid? Well, they did not fall, Your Honor, within one of the 13 categories listed in Section 1905. But isn't that fatal? Well, Your Honor, under Section 1923, that is really a waiver statute. What that does is it authorized the state to bring in additional categories of patients who would not otherwise be eligible under one of the 13 categories in Section 1905. Yes, but is the state going to pay for that, those categories, or is it the federal government? It's a match, Your Honor. That's exactly what happened. The federal government, the state pays because it was included in the state plan. Under Section 1923, the state paid its percentage. And as recognized by the CMS administrator, at ER 30, that additional funding was provided by the federal government to match it. And it's just matched at the same federal medical assistance percentage rate as it was matched with any other Medicaid patient. It's the exact same mechanism. And at ER 137, CMS Form 64, Line 1B, is an example of exactly how it is that matching methodology occurred. So the state, in other words, this federal payment was made to the state to reimburse or offset the state's cost for medical assistance expenditures. Let me ask you. What does medical assistance mean? It has the definition. Under Medicare and Medicaid, is it the same? Yes. I think it is, Your Honor. I'm not disputing that. I think I'm not disputing the Adena decision, Your Honor. We're not here to dispute the Adena decision, and we're not here to contest that Section 1905 controls. What we're saying is And I don't think I understand your argument at all. Well, the argument is If they have the same definition, I don't know why that just doesn't foreclose your argument. Well, there are three requirements, Your Honor, under Section 1905. A per-payment claim that was made in this case, and it was a claim attributable to a specific individual. That was done in this case. That's one. For a covered service, that was done in this case. Now, it's not in one of the 13 categories in Section 1905, but Section 1923 authorized specifically the State to include additional categories who would not otherwise be eligible under one of the 13 categories in Section 1905, and that's exactly what the State did, and that's exactly how the State had the authority to bring these patients into the State plan, and I would also note to the Court, once that was done, the State could no longer terminate the program. It no longer had the authority to terminate the program because once it's in the State plan, the plan can be amended only if the State federal government gives its permission by an amendment to the State plan. And I would also like to note to the Court, by the way, that in terms of there's been a lot of discussion about federal financial participation in this case, I would note that under Section 1901 of the Section 1905 definitionally requires a payment, but that medical assistance payment is the payment that's made to the hospital or, in certain cases, to the individual in the case of physician or dental services. And in... No, Counselor, you haven't discussed Phoenix Memorial yet. Where does that fit? Well, Your Honor, in Phoenix Memorial, those patients were not included in the State plan. In this case, the CMS administrator made a specific finding of fact at ER 30 that these patients were incorporated into the State plan and that... I thought in Phoenix Memorial that they were included as part of the plan. It was an exemption plan. Well... It was an experimental plan. Well, I think... And the Court there pointed out that the... that the medically... Was it indigent? No. The group that was at issue in that case were not... funded purely by the State. Isn't that right? Well, first of all, Your Honor, in this case, it would be absolutely incorrect. The CMS administrator noted that there was additional funding under Section 1923 from the federal... That funding comes from the federal government. Under Section 1923 is an expenditure statute. And so that funding is from the federal government. So this was not that type of situation, number one. Number two, for purposes of the operative definition of medical assistance in Section 1905, the requirement is for a payment, a medical assistance payment. And under Section 1901, only the State can provide medical assistance. CMS role is limited under Section 1903 and under Section 1905 to reimbursing the States.  actually pivots on the payment from the State of Washington to the hospital or in the case of physician or dental services to the individual. If there are no further questions... Are all the persons that you say figure eligibility for the university to collect from the federal government, do they all have identical background and situation? Well, first of all, Your Honor, it's... Do they or don't they? I'm sorry, do they all have identical... They're all low income, Your Honor. They are all low income and they have special needs. Low income with special needs. That is how they're categorized. Every patient is low income and special needs or some prescribed need. No, it's low income with special needs. That is the requirement. And they meet that requirement. They all fall within that category, all low income with special needs. Is there any other restriction on the patients subject to payment by the government? Could you elaborate on it? Categorical item? Now, this section 1923 only applies to inpatient services, Your Honor. That's all that we're discussing here. It only applies to inpatient hospital services. I hope I answered your question. If I didn't, please tell me. Well, you're saying the patients that are excluded meet every single definition that exists as to the included patients. Right. Present conditions. That's right. They are in all respects eligible for medical assistance under the section 1905 of the Social Security Act except for the fact that they do not fall within one of the 13 categories. And what we're saying is section 1923 authorized them. So there is a difference. There is a difference. There is a difference. But we respectfully submit that section 1923 authorized those, the States to give authority to the States to include those additional low income patients. That's the way I read it. And I think the statute further limits the eligibility requirement to the decision of the commissioner, right? No, Your Honor. Not at all. The commissioner? Government officer. No, Your Honor. It's like anything else, Your Honor. The government officer is subject to challenge if his decision is arbitrary, capricious, or not in accordance with law. Does the statute deal with it at all? Well, the statute, section 19, yes, Your Honor. There's a statute that specifically authorizes the appeal process, which is in this case. And the standard is the APA standard, arbitrary, capricious, or abuse of discretion. Do you want to say a word about this jurisdictional matter? Yes. Yes, Your Honor. The administrator made a determination in his footnote that this issue was the subject, was the subject of a revised notice of program reimbursement, NPR. The language is was, not was not. And because the language is was, there is jurisdiction. That's all I wanted to say about it, Your Honor. But that only affects a portion of the total. Yes, that affects 13 of the hospitals. Sorry, Your Honor, 13 of the cost jurisdictions. Of the cost, okay. Very well. Do you want to reserve? Five minutes, Your Honor, if I may. Well, you can get three minutes and 48 seconds. Thank you, Your Honor. Reserve for these 20 seconds. All right, thank you. We'll hear from the department. Thank you, Judge O'Scanlan. And may it please the Court, Peter Wynn on behalf of Secretary Sebelius. There is no dispute that the MI and GAU patients here at issue today are not eligible for Medicaid. The eligibility criteria in the GAU and MI programs exclude patients who are otherwise eligible for coverage under programs like Medicaid. And if you'll turn, or we can reference page six of our brief where we're dealing with the statutory language, which is at issue here. The statutory language we're working with is patients who, for such days, were eligible for medical assistance under a state plan approved under subchapter 19 of this chapter, which is that we all agree that that's the Medicaid program. So it'd have to be a state plan approved under the Medicaid plan. No dispute so far. Now, the Secretary's regulations, which are found at section 412.106B4 of 42 CFR, says that when you apply the Medicare DISH provision, you only count patients who are eligible for Medicaid. Now, three courts of appeals, including this court in Phoenix Memorial, have held that the language of the Medicare DISH provision excludes patients who are not eligible for Medicaid. Phoenix Memorial followed Adena. Adena is a leading case by Judge Douglas Ginsburg in the D.C. Circuit, and the relevant section of that decision is at 179-180 Phoenix Memorial. The relevant section we'd reference you to would be pages 1226. And then Cooper University, which is a decision of the Third Circuit that just came down, in an unpublished decision, the decision of the district court. Now, Adena and Phoenix Memorial, which we believe are the cases that are most helpful in this analysis, go with the plain language of the statute. And they held that the phrase, eligible for medical assistance under the state Medicaid plan, was just a long-winded way of saying eligible for Medicaid. Now, Cooper University reached the same result, but it used a Chevron 2 analysis where it deferred to the secretary's regulation. Now, there's, again, no dispute that patients here are not eligible for Medicaid. As counsel has just said, these patients are not, they don't meet all the Medicaid eligibility criteria. And we would respectfully submit that that's the end of the analysis. Now, the reason that Adena and Phoenix Memorial reached the result that they did, turns in large part on how they read the statutory definition of the phrase medical assistance, as it appears in the Medicare DISH statute. And that definition of medical assistance, to understand that definition, they read that definition to be a statutory term of art, which is defined in Section 1396DA of the Medicaid statute. And that definition says that medical assistance means payment of part or all of the cost of a specific set of enumerated services to, that that payment has to be made on behalf of those patients who meet the Medicaid eligibility criteria. The Medicaid eligibility criteria, which the hospital concedes, the patients under the MI and the GAU programs, they don't meet those eligibility criteria. They're not eligible for Medicaid. So if we follow the definition of medical assistance as found in the Medicaid statute, if the hospitals concede, they lose. Now, why do we want to follow that definition here? Why do we want to use the identical phrase, which is eligible for medical assistance under a state plan approved under Subchapter 19 of this chapter? Why do we want to follow that definition, identical term in the same statute? This is the Social Security Act. And generally speaking, the rules of statutory construction say when an identical phrase appears in the same overall statutory scheme, you read it the same way. In this case, there's a particularly good reason to read those two terms in the same way. And that's because in the Medicare DISH statute, it references the Medicaid eligibility criteria. So we would respectfully say that that ends the analysis. And that's what Judge Ginsburg did in Phoenix Memorial. In Phoenix Memorial, he simply went through analyzing this case, the case that was before him, out of an Ohio plan, and Judge Ginsburg looked at that definition and said, this disposes of this argument. May I ask, where does our Legacy Emanuel case fit as you look at these cases? Well, Legacy Emanuel, as I recall, dealt with a situation of, I mean, where patients hadn't actually been covered, but they were eligible. In other words, these were Medicaid patients who were eligible, but they'd run out of the period of time when they would get benefits, so the claim wasn't actually paid. And the court, this court in Legacy Emanuel, ruled the key issue in determining the meaning of the Medicare DISH statute, eligibility for medical assistance, was not determined by whether the claim was paid, but whether the patient was eligible. And we submit that that should be controlling today, just as the Phoenix Memorial decision did exactly the same thing. So they were eligible in Legacy Emanuel, but they're not eligible in this case. Exactly. That's exactly the distinction that we're trying to focus on. And it all comes off of the definition of medical assistance. All right. No further questions. I'll see the remainder of my time. No further questions. Thank you, counsel. Mr. Levitsky, you have some reserve time. Thank you, Your Honor. First, I would emphasize the fact that these patients were included in the Medicaid inpatient utilization rate. And the fact that they were included, as I mentioned earlier, and the fact that formula for the Medicaid inpatient utilization rate is verbatim identical, as the district court noted in Cooper, to the Medicaid fraction at issue in this case. And I would also note that in Portland and Venice, this court permitted Section 1115 patients to be counted as Medicaid eligible, even though those patients weren't eligible either under the strict definitions of Section 1905. And in this case, Section 1923 works in an analogous fashion to Section 1115, which was construed by the court in Portland and Venice. In terms of Section 1905, it's also important to note that there is nothing in Section 1905 which specifically precludes the payment of medical assistance to anyone except for people who are in mental institutions or people who are inmates in public institutions. So Sections 1923 and Section 1905 have to be construed in pari materia. They have to be construed together. And in doing so, just like the court authorized in Portland with respect to Section 1115, these patients should also be determined to be eligible for medical assistance. And furthermore, there is really no definition, no difference between Medicaid and medical assistance. They're one and the same. Medicaid equals medical assistance and vice versa. So effectively, Your Honor, we need all of the tests in this case to fall within the definition of medical assistance for purposes of Section 1905. A specific payment for a covered service, and just like in Portland Section 1115 authorized the patients to be eligible for medical assistance, so in this case should Section 1923 authorize these patients to be eligible for medical assistance. The application was made and the administrator thought to the contrary, though, didn't he? The administrator made two conflicting determinations of fact. On the one hand, the administrator says it's a state-only program. At ER 30, the administrator says the MIGAU program was incorporated into the state plan, approved under Title 19 for purposes of additional funding under Section 1923. It can be one or it can be the other. It cannot be both. Those are two completely conflicting factual determinations, and it was the first one that was spot-on correct. There was a determination. There was that these patients were in the state plan, and that is further illustrated by the fact the state can't terminate it until it gets permission from the federal government to do so. Anything further? No, thank you, Your Honor. Thank you, Counsel. It's been an honor to appear before the Court. Thank you. Thank you very much, Counsel. The case just argued will be submitted for decision.
judges: Beezer, O'scannlain, Paez